```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **JOHN GUILLORY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2169** |
| **NEWPARK ENVIRIONMENTAL SERVICES, L.L.C.** | **SECTION "B"(5)** |

## ORDER AND REASONS

Nature of Motions and Relief Sought:

Before the Court are Defendant Newpark Environmental Services, L.L.C.'s ("Newpark") Re-Urged Motion for Summary Judgment, Plaintiff John Guillory's ("Guillory") Opposition, and Newpark's Reply. (Rec. Doc. No. 52, 52-1, 57 & 61). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that the Motion for Summary Judgment is **GRANTED**.

Procedural and Factual History

Guillory was an employee of Original USA General Labor, LLC and USA Environmental Services, Inc. ("USA"), starting in March of 2012. (Rec. Doc. No. 57 at 1). Newpark is an oil and gas environmental company which entered into a Master Service Agreement ("MSA") with USA. (Rec. Doc. No. 1-1 at 2, 12-1 at 1). The MSA provided that Newpark was a "Statutory Employer" for the purposes of Louisiana Workers' Compensation law. (Rec. Doc. No. 52-1 at 3).

As an employee of USA, Guillory was sent to work as a rigger at Newpark's yard on May 18 and 19, 2012.(Rec. Doc. No. 57 at 1).

USA furnished him to Newpark pursuant to the MSA. (Rec. Doc. No. 12-6 at 3). On May 19, 2012, during his second day of work at the yard, Guillory was helping to unload a tank from a truck. (Rec. Doc. No. 12-1 at 2). Specifically, he was fastening the tank to a crane block for transport. (Rec. Doc. No. 57 at 1). Guillory alleges that as he was attempting to attach straps to the tank, the crane operator prematurely and without warning swung the crane's cable block in Guillory's direction. *Id.* at 2. Guillory raised his hands to protect his face and his fingers were caught in the crane's pulley system. *Id.* The resulting injuries were severe and resulted in the amputation of three of Guillory's fingers. *Id.* Guillory filed suit in state court against Newpark on August 9, 2012, alleging negligence and seeking various damages. (Rec. Doc. No. 1-1 at 3).

Newpark now seeks summary judgment on the grounds that it is a "statutory employer" and immune from the instant suit under La. R.S. 23:1021. The Court denied Newpark's prior Motion for Summary Judgement without prejudice to reurge, noting that further discovery may be needed.[1] (Rec. Doc. No. 29 at 6).

---

[1] As Newpark points out, both the Court's prior order denying summary judgment and the parties briefs relied on case law that has been legislatively overruled. The parties cited and the Court applied the "totality of the circumstances test" set forth in *Kirkland v. Riverwood Int'l USA*, 681 So.2d 336, 337 (La. 1996). That test was expressly overruled when the Louisiana legislature amended Louisiana's workers compensation statute with the burden-shifting scheme applied herein. *See* 1997 La. Acts, No. 315 § 2; *Berthelot v. Murphy Oil, Inc.*, CIV.A. 09-4460, 2010 WL 103871 at *3 (E.D. La. 2010); *Conner v. Kraemer-Shows Oilfield* Servs., CIV.A. 11-2206, 2013 WL 2644522 at *3 (W.D. La 2013).

LAW and ANALYSIS

**I. Standard of Review**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Webb,* 139 F.3d at 536. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**II. Tort Immunity Under Louisiana Workers' Compensation Laws**

In this diversity suit, and as both parties concede, Louisiana law controls. (*See* Rec. Docs. No. 52-1 at 5 & 57 at 3).

Under the Louisiana Workers' Compensation Act, workers' compensation payments provide the exclusive remedy for work-place injuries that were not intentionally caused. *See* La. R.S. 23:1021 *et seq.; Morena v. Entergy Corp.*, 105 So.3d 40, 49 (La.2012); *Allen v. State of Louisiana*, 842 So.2d 373, 378-81 (La.2003). Thus, employers are immune from suits seeking recovery for non-intentional torts alleged in the scope of a plaintiff's employment. *See* La. R.S. 23:1032(A).

This immunity applies to both direct employers and entities contracting for labor with direct employers. *See* La. R.S. 23:1032(A)(1)(limiting rights and remedies against employers "or any principal." ). Thus, Louisiana's workers' compensation scheme employs the concept of a "statutory employer" to confer immunity and impose the corresponding obligations on companies that procure labor through third party contractors. 14 H. Alston Johnson, La. Civ. L. Treatise, *Workers' Compensation Law and Practice* § 364 (5th ed. 2003).

Such non-direct employers, or "principals" in statutory parlance, may establish immunity as a statutory employer in two ways: by invoking the "trade, business or occupation defense," or by invoking the "two contract theory."  *Allen*, 842 So.2d at 378;

4

*see also Berthelot v. Murphy Oil, Inc.*, CIV.A. 09-4460, 2010 WL 103871 at *3 (E.D. La. 2010).

Here, Newpark invokes both, (Rec. Doc. No. 52-1 at 5), but the court need only address the former, which clearly establishes that Newpark is immune from the instant suit.

**A. The Trade, Business, or Occupation Defense**

La. R.S. 23:1032(A)(2) provides that a statutory employer relationship exists "whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer." La. R.S. 23:1061(A)(2). Where a contract between a principal and a contractor states in writing that the principal is a statutory employer, "there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees." La. R.S. § 23:1061(A)(3); *Conner v. Kraemer-Shows Oilfield* Servs., CIV.A. 11-2206, 2013 WL 2644522 at *3 (W.D. La 2013); *Everett v. Rubicon, Inc.*, 938 So.2d 1032, 1042 (La. App. 1st Cir.2006). Employee-plaintiffs asserting tort claims against a principal can only rebut this presumption "by showing that [the plaintiff's] work is not an integral part of or essential to the ability of the principal to generate [its] goods, products, or services." La. R.S. § 23:1061(A)(3); *Conner* at *3; *Everett* at 1042.

5

Here, Newpark is entitled to a presumption of a statutory employer relationship. The MSA between Newpark (the principal) and USA (the contractor) explicitly labels Newpark a "statutory employer." Specifically, Section 7 of the MSA states that:

> In all cases where the Louisiana Worker's Compensation Act, La. R.S. 23:1021, et seq. is applicable, COMPANY [NEWPARK] and CONTRACTOR [USA] acknowledge and agree that all work and operations performed by CONTRACTOR and its employees (defined to include the direct, borrowed and/or statutory employees of CONTRACTOR) pursuant to this Agreement are an integral part of and are essential to the ability of COMPANY to generate COMPANY'S goods, products or services. Without limiting the foregoing, **COMPANY and CONTRACTOR agree that COMPANY is and shall be deemed a statutory employer of CONTRACTOR'S employees (as defined above) for purpose of La. R.S. 23:1061(A)(3)**, as the same may be amended from time to time.

(Rec. Doc. No. 12-7 at 3). Accordingly, the burden to show that his work was not an "integral part of or essential to the ability" of Newpark to produce its "goods, products, or services" passes to Guillory.

The Court finds that Guillory has not produced sufficient evidence to rebut that presumption. In opposing the instant motion, Guillory makes no reference to affidavits, depositions, interrogatories, admissions, or any other evidence. That is, he has not only failed to produce the evidence required to rebut the presumption against him, he has not produced any evidence at all. Instead, Guillory simply asserts in conclusory fashion that his work as a "general laborer" was not integral to Newpark' work.

Generously construed, his argument is simply that because tanks may be cleaned without the use of cranes, it follows that crane-rigging duties are not absolutely necessary to effect Newpark's tank-cleaning services. (Rec. Doc. No. 57 at 6). This assertion is insufficient to rebut the burden imposed by La. R.S. § 23:1061(A) and fails to raise a genuine issue of material fact thereunder.

In opposing Newpark's prior motion for summary judgment, which this court denied without prejudice to re-urge (*see* Rec. Doc. No. 29), Guillory pointed to his own deposition testimony, contending that it established (1) that the work he performed for Newpark was "specialized," (2) that Newpark customarily outsourced such work, and (3) that such work was therefore not integral to Newpark's services. (Rec. Doc. No. 27 at 5). In essence, Guillory argued that Newpark customarily outsourced rigging functions and for that reason such functions cannot be deemed "integral" or "essential" to production of Newpark's business.

This argument falls short because Guillory's testimony in no way establishes a genuine issue of fact as to whether Newpark's own employees did or did not customarily perform rigging work. Guillory's deposition is nothing but a description of the day of the accident. It simply establishes that Guillory worked as a

rigger for two days and describes the details of such work.[2] In other words, Guillory's testimony merely recounts Guillory's

---

[2] The entirety of the testimony cited in Guillory's prior opposition reads as follows:
Q. When you talk about roustabouting, is that different in your mind than working with the crane?
A. In general, that is basically everything on the yard.
Q. Okay. But for purposes of our discussion, I just want to make certain. When you are telling me you are talking about you were rigging, that means you were working with the crane?
A. With the crane. Yes, sir.
Q. And roustabouting would be just the general stuff; anything else?
A. Everything. Yeah.
Q. Okay. So the day before you had done a good bit of rigging as well?
A. Basically, all day.
Q. Basically, all day?
A. Yeah.
Q. Was Victor, the day before, was he a signalman too?
A. No. We didn't need him that day.
Q. Okay.
A. Because -- yeah. We didn't need him. The only reason we used that signalman at that time was because the trailer was in the wrong place. You use a signalman whenever the crane can't -- don't have a visual sight on the rigger. So you need that third man to actually be the eyes.
Q. So the day before you did not need a signalman, because the crane operator had a line of sight with his rigger?
A. Exactly.
Q. But on the 19th you needed a signalman, because the crane operator did not have a line of sight with the rigger, which would have been you?
A. Just for that particular task, yes, sir. Can we go back?
Q. Sure.
A. I think it was that previous day, which was the 18th, we did need a signalman, because I was in the boat at that time. I was unhooking boxes and stuff on the boat. So I was actually too low to where the crane couldn't see me. So the signalman had to stand on the dock.
Q. Was the signalman, Victor, there that day? When I say that day, the 18th.
A. The 18th. At that time.
Q. So Victor would have been the signalman when you were on the boat on the 18th and Victor was also the signalman at the time of your injury on the 19th?
 A. Yes, sir. Yes, sir. Just came back to me. Sorry ....
Q. And so they would subcontract certain parts of their business to say USA Environmental to help with the rigging?
A. Exactly.
(Rec. Doc. No. 27-2 at 10-12, 15)

knowledge of who did what work on those days; it does not establish that no Newpark employees performed rigging on those days, as Guillory contends, let alone that Newpark employees customarily do not perform such work.

Guillory's testimony also fails to establish a *material* issue of fact because outsourcing duties does not render them non-integral or unessential for the purposes of La. R.S. § 23:1061(A)(3). *See*, *e.g.*, *Conner v. Kraemer-Shows Oilfield Servs.*, CIV.A. 11-2206, 2013 WL 2644522 at *3 (W.D. La 2013) ("[W]hether Conner's work was specialized or independent from that of Exco are not determinative factors in the court's analysis."); *see also Arnold v. Shell Oil Co.*, 419 F.2d 43, 50 (5th Cir. 1969) (explaining that "if the test...were whether the employer had any employees engaged in similar functions, the employer could easily subvert the statute by contracting out all of the various parts of his business.")

In summary, Guillory has not produced competent evidence to establish a genuine issue of material fact needed to overcome the presumption that Newpark is a statutory employer under the "trade, business, or occupation " defense. In his opposition to the instant motion, Guillory has made only conclusory claims. In his prior opposition, the evidence on which he relies does not support his factual assertions and is not grounds from which a reasonable person could find in his favor. Accordingly, he has

failed to rebut the presumption of a statutory relationship in favor of Newpark, and summary judgment may be entered against him on these grounds alone.

**B. The Master Service Agreement is Valid and Enforceable**

Guillory also argues that the MSA is invalid for violating public policy. (Rec. Doc. No. 47 at 4). Distilled to its essence, Guillory's argument is that the MSA violated public policy by allowing Newpark to evade workers' compensation payments.

Section 7 of the MSA provides that Newpark and USA "agree, vis-a-vis one another, that [USA] shall be primarily responsible for the payment of all compensation benefits paid to or for the benefit of [USA's] employees." (Rec. Doc. No. 12-7 at 3). Section 9 similarly provides that USA "shall be solely responsible for the compensation, benefits, contributions and taxes, if any, of its employees . . ." *Id.* at 5. Guillory argues that these provisions invalidate the MSA because they subvert the purpose of workers' compensation law and delay the benefit claims process. (Rec. Doc. No. 57 at 5).

Guillory relies on *Prejean v. Maintenance Enterprises*, 8 So.3d 766 (La. App. 4th Cir. 2009). There, a Louisiana Appellate Court invalidated a contract providing that the statutory employer was only liable for workers' compensation benefits "if the immediate employer...is unable to meet their financial

obligation under the Louisiana Workers' Compensation Statute..." *Prejean* at 768. The *Prejean* court held the contract invalid on the grounds that it would "place an onerous burden on an injured worker to discover and prove" that an immediate employer was "unable to pay" workers' compensation benefits. *Id.* at 774-75.

Here, the MSA contains no comparable language and places no burden on employees seeking workers compensation benefits. Sections 7 and 9 merely delegate duties as between primary and statutory employers. As several courts— including the *Prejean* Court—have recognized, employers may regulate responsibilities among themselves. *See*, *e.g.*, *Prejean v. Maintenance Enterprises*, 8 So.3d 766, 774 (La. App. 4th Cir. 2009) (statutory employers are not prohibited from contracting as to rights of contribution or indemnity against direct employers); *Berthelot v. Murphy Oil, Inc.*, CIV.A. 09-4460, 2010 WL 103871 at *8 (E.D. La. 2010) (holding that provisions nearly identical to those contested here are valid under Louisiana law).

As Chief Judge Vance noted in *Berthelot*, contractual provisions indemnifying statutory employers against primary employers would not establish immunity from claims for workers compensation benefits asserted by *injured workers*. *Id.* Had Guillory sought such benefits from Newpark, which he apparently has not, sections 7 and 9 of the MSA could not have prevented him. Here, however, Guillory brings claims sounding in tort. For

11

the reasons stated above, Newpark is immune from such claims.

### III. Conclusion

Guillory has failed to raise a genuine issue of material fact as to Newpark's status as a statutory employer and the consequent immunity arising under La. R.S. 23:1032. Accordingly,

**IT IS ORDERED** that the motion be **GRANTED** and summary judgment is entered in favor of Newpark.

New Orleans, Louisiana, this 22nd day of October, 2013.

_____
UNITED STATES DISTRICT JUDGE